GEORGE R. KELSEY vs. JOSEPH H. REMER.

An attachment resting upon land is an incumbrance upon it within the meaning of the covenant against incumbrances in a deed.

Where. after the attachment suit has gone into judgment, the covenantee in good faith pays the amount of the judgment, to free the land from the incumbrance, the measure of damages in a suit upon the covenant should be the amount so paid, if not greater than the value of the land, but if greater, then the value of the land.

Where an execution upon such a judgment had been levied upon the land attached, but by reason of irregularity in the proceeding the levy was void, but the lien of the attachment had not yet expired, and the covenantee in good faith paid the amount of the judgment, it was held that the law would give no weight to the fact that the attaching creditor might not have discovered the invalidity of the levy and made a new one before the attachment lien had expired, and that the covenantee was entitled to recover full damages.

COVENANT, for the breach of a covenant in a deed against incumbrances; brought to the Court of Common Pleas of New Haven County. The following facts were found by the court.

The premises in question, known as the Savin Rock property, were on the 16th of September, 1870, owned by J. H. Dawe, T. H. Dawe and Thomas Scott, partners under the name of J. H. & T. H. Dawe & Co., who continued to own the same until the 15th of May, 1871, when they conveyed them to the defendant.

On the 19th of May, 1871, the defendant conveyed the

VOL. XLIII.—17

premises to the plaintiff, by a warranty deed, with a covenant against all incumbrances.

On the 16th of September, 1870, while Dawe & Co. were the owners of the property, one McGinn had attached the property in an action against them upon a claim against them in his own favor, upon a writ returnable, and afterwards duly returned, to the Court of Common Pleas for New Haven County at its October term in the year 1870. The writ demanded five hundred dollars damages. The parties respectively appeared in the suit and it came by regular continuances to the January term of the court in the year 1874, when the defendants made default of appearance and the plaintiff in the suit on the 22d of January obtained a valid judgment against them for $334.95 (including costs,) and on the 3d of March, 1874, took out execution in due form of law and delivered it to Hobart L. Hotchkiss, then a deputy sheriff of New Haven County, to be levied.

There was also another attachment put upon the property by Johnson & Ward, creditors of Dawe & Co., at about the same time with that of McGinn. Their suit was brought to the same court and went into judgment at the same term with that of McGinn, but it did not appear that execution was ever levied upon the property attached.

While the plaintiff was negotiating with the defendant for the purchase of the Savin Rock property he had no knowledge of any attachment upon the property, but on the day when he took his deed from the defendant (May 19th, 1871,) these attachments were spoken of, and as an additional protection to the plaintiff, but not in lieu of the covenant in the deed, the defendant signed an agreement to pay all expenses in defending against the suits.

About February 14th, 1874, the plaintiff learned that McGinn and Johnson & Ward had then or recently obtained judgments in their respective suits, and intended to collect the same out of the property, and on the 16th of February he wrote to the defendant, then in St. Augustine, Florida, stating the facts, and asking for instructions. The defendant received this letter about February 24th, 1874, but did not answer it.

On the 6th of April, 1874, Hotchkiss, the deputy sheriff, with the McGinn execution, made demand of the plaintiff for the payment of the same, and notified him that if payment was not made he should proceed to levy the execution on the property. The plaintiff thereupon wrote again to the defendant for instructions, but received no answer.

On the 6th day of April, 1874, the deputy sheriff levied the execution on the premises, and made return of his doings on the execution, which execution and return were offered in evidence by the plaintiff. The defendant objected to the return, on the ground that upon its face the officer had not shown that he had made any demand at the last usual place of abode of the debtors, for goods and chattels of the debtors, whereon to levy the execution; and further, because it did not sufficiently appear from the return that D. S. Thompson, one of the appraisers, was an indifferent person. The plaintiff claimed that it did sufficiently appear from the return that due demand and search for goods and chattels of the debtors had been made, and that Thompson was an indifferent person, and further that the defendant had no right to object to the validity of the return, or take any advantage of any defects therein, and that no such defense was set up in the notice. The court admitted the return in evidence subject to the objection.

After the demand made upon the plaintiff to pay the execution, he supposed that the property would be posted for sale, like personal property on execution, and accordingly kept watch of the sign post, where the notice would be posted. On or about April 17th, 1874, he first learned that the effect of the levy had been or would be to vest in McGinn the absolute title to a small fractional interest in the whole of the Savin Rock property, and that McGinn and he had become or would become tenants in common. Such a result would have been of very great damage to the plaintiff, exceeding the appraised value of McGinn's fractional interest, unless McGinn would have been willing to sell out his interest for the appraised value. In order to prevent any such tenancy in common, or to regain the title, if McGinn had then obtained

the title, and to remove all claim which McGinn had or might have on the property, by virtue of the attachment or levy, the plaintiff, on the 17th of April, 1874, opened negotiations with him, the result of which was that McGinn agreed to transfer, and did transfer, whatever interest he had in the property to the plaintiff, for the consideration of $300, paid him by the plaintiff. The transfer was made by a quit claim deed.

The defendant offered evidence to prove, and if the evidence was admissible did prove, by the testimony of Scott, one of the execution debtors, that ever since the McGinn suit was commenced to the present time, he had been a resident of the town of Orange, in the village of West Haven, in which village the Savin Rock property is situated. The plaintiff objected to the admission of this evidence, because there was no notice of such defense, and because the defendant had no right to object to the validity of the levy of the execution; but the court admitted it, subject to the objection. The defendant claimed that for this reason the levy was invalid.

The officer serving the execution did not know that Scott was then a resident of Orange, and acted in good faith.

The plaintiff at the time of the payment of the $300 to McGinn, and receiving the quit claim deed from him, was ignorant of any mistakes that the officer might have made in the levy, or of any defects in the levy or return, and acted in good faith.

The plaintiff thereupon offered evidence to show, and if the evidence was admissible did show, that Scott, since January 1st, 1874, to the present time, never had any other property with which he could have paid the McGinn execution, or any other property which he could have exposed to the officer having the execution, whereon to levy, and also that J. H. & T. H. Dawe during the same period had no other property within the precincts of the officer, or elsewhere in this state, whereon the execution could be levied, except the interest in the Savin Rock property.

Upon these facts the case was reserved for the advice of this court.

*J. W. Alling,* for the plaintiff.

1.   An attachment lien is an incumbrance on the land within the meaning of the covenant in a deed against incumbrances.   Rawle on Covenants, 94, 96; *Lyon* v. *Sanford,* 5 Conn., 548; *Barnard* v. *Fisher,* 7 Mass., 71; *Harlow* v. *Thomas,* 15 Pick., 69; *Shearer* v. *Ranger,* 22 id., 447, 449; *Johnson* v. *Collins,* 116 Mass., 392; *Norton* v. *Babcock,* 2 Met., 510; *Hall* v. *Dean,* 13 Johns., 105; *Nyce's Exrs.* v. *Obertz,* 17 Ohio, 74.   An inchoate right of dower is universally held to be an incumbrance within such a covenant.   *Bigelow* v. *Hubbard,* 97 Mass., 195; *Fitts* v. *Hoitt,* 17 N. Hamp., 530; *Carter* v. *Denman's Exrs.,* 3 Zabr., 272; *Porter* v. *Noyes,* 2 Greenl., 22; *Runnells* v. *Webber,* 59 Maine, 490.   Also a lien for taxes.   *Cockran* v. *Guild,* 106 Mass., 29; *Almy* v. *Hunt,* 48 Ill., 45; *Long* v. *Moler,* 5 Ohio S. R., 271.

2.   What is the rule of damages?   In the parallel case of *Johnson* v. *Collins,* 116 Mass., 392, where the incumbrance was an attachment lien, which had been paid after judgment, the court say :—" In an action to recover damages for a breach of the covenant in a deed against incumbrances, where the incumbrance is one which can be removed by the grantee, he may recover the amount fairly and just paid by him for the removal of such incumbrance, not exceeding the value of the estate."   The same point was ruled in *Norton* v. *Babcock,* 2 Met., 510, and in *Hall* v. *Dean,* 13 Johns., 105.   The amount paid was $300.   The judgment was $334, and the consideration paid $18,500.   See also *Mitchell* v. *Hazen,* 4 Conn., 512; *Davis* v. *Lyman,* 6 id., 255; *Prescott* v. *Trueman,* 4 Mass., 631; *Delavergne* v. *Norris,* 7 Johns., 358; *Runnells* v. *Webber,* 59 Maine, 490; *Bigelow* v. *Hubbard,* 97 Mass., 195; *Sturtevant* v. *Phelps,* 16 Gray, 50 ; *Carter* v. *Denman's Exrs.,* 3 Zabr., 272.

3.   The alleged mistakes in regard to the levy of the execution, did not affect the right of Kelsey to remove the attachment lien by payment, and resort to this covenant for indemnity, provided he acted in good faith.   In *Norton* v. *Babcock,* the party holding the lien, after judgment, merely notified the covenantee that he should avail himself of that lien.   The

covenantee then paid and recovered. In *Johnson* v. *Collins*, the covenantee simply "paid the execution issuing on the attachment," and recovered the amount so paid. There was no attempt to levy the execution. In *Hall* v. *Dean*, the covenantee paid the judgment, which was secured by judgment lien; no execution was issued. In *Almy* v. *Hunt*, 48 Ill., 45, where the lien for taxes was the incumbrance, it was held no objection to a recovery, that the premises were not properly listed, or *that there was no legal levy on the premises*. In *Snyder* v. *Lane*, 10 Ind., 424, it was held no objection that the grantee had paid the mortgage incumbrance *before it was due*. In *Hutchins* v. *Moody*, 34 Verm., 437, it was decided that the covenantee was justified in paying the taxes, and resorting to this covenant, when the officer had by some official act proceeded so far as to *manifest his intention to pursue the land, for the purpose of enforcing the collection of taxes, agreeably to law*. The officer in that case was the tax collector, and corresponds, in this case, to McGinn, and not to the sheriff. McGinn, and the sheriff also, had *sufficiently manifested their intention* to take the attached property for the debt, before Kelsey paid it.

*W. B. Wooster*, for the defendant.

1. Is an attachment on mesne process, not followed by levy of execution, an "encumbrance," within the meaning of the covenant against encumbrances in the deed in question? An encumbrance is described by Rawle thus: "Every *right to* or *interest in* the land, which may subsist in third persons to the diminution of the value of the land, but consistent with the passing of the fee by conveyance." As a general rule this definition is correct, but the question recurs, "what does diminish the value of the land," and thus form an encumbrance; and is this a question of law or fact? Rawle on Cov. (4 ed.), 94; *Prescott* v. *Trueman*, 4 Mass., 629; 2 Greenl. Ev., § 242; *Mitchell* v. *Warner*, 5 Conn., 508, 527. This definition of an encumbrance is generally given when a definition is attempted. But the same covenant has a widely different meaning in the different states. In most states a public

highway crossing the land deeded is held an encumbrance, while in many others such highway is not held an encumbrance, within the meaning of that covenant. *Kutz* v. *McCune*, 22 Wis., 629. A reservoir and mill pond held not to be an encumbrance. *Ib.* An attachment of real estate, under our law, simply gives to the attaching creditor the power to satisfy a judgment (if any shall be obtained) in the *precise way* pointed out by the statute. An attachment is the first step in a chain of acts, under the statute, to gain a right or interest in the land. It gives *no right to the land; no interest in the land! Kellogg* v. *Wadhams*, 9 Conn., 208; *Gates* v. *Bushnell*, id., 533; *Beers* v. *Place*, 36 id., 582. No case can be found in the books in Connecticut, where a simple attachment without levy has been held an encumbrance, and it is believed none exist in any other state. In *Barnard* v. *Fisher*, 7 Mass., 71, the court hold that an attachment before levy is not an encumbrance. In *Hutchins* v. *Moody*, 30 Verm., 658, where a tax deed was defective and the claim was, that the land was subject to a tax when the covenant was made, the court, by Judge Redfield, say: "But the difficulty is, the burden has never been legally imposed upon the land. It is still a possibility. It is more in analogy to a *mere attachment*, and it is well settled that a *mere attachment* of land is no encumbrance. It creates no estate, no definite burden upon the land."

2. Was any title or interest acquired by a levy, which, by relation to the attachment, created an encumbrance? The execution and return thereon were inadmissible by reason of certain defects apparent upon the face of the same. The acquisition of real estate by execution is derived from statute, is in derogation of common law, and is *stricti juris*. The omission of any statute requisite is fatal. *Fitch* v. *Smith*, 9 Conn., 45; *Peck* v. *Wallace*, id., 456. In this case the levy treated the defendants in the execution as non-residents. The statute requisites for a levy were not complied with. There was no search for personal estate. And no demand for goods and chattels of the defendant, at the last usual place of abode of the defendant in this state. *Coe* v. *Wickham*, 33 Conn.,

394. Also it does not appear that D. S. Thompson, an appraiser, was an indifferent freeholder of the town of Orange.

3. If the court shall advise that an attachment without being followed by a legal levy is an encumbrance within the meaning of the covenant, then only nominal damages can be recovered. The covenant being broken instantly on the making of it, the plaintiff can only recover such damages as must, as a necessary consequence, follow. Until the plaintiff has suffered actual damages, he can recover only nominal. *Coe* v. *Stow*, 8 Conn., 538, 540; *Nyce's Exrs.* v. *Obertz*, 17 Ohio, 71; *Runnells* v. *Webber*, 59 Maine, 389. The defendant warranted against the legal effect of that attachment; not against the fears, or fraud, or folly of the plaintiff. The legal effect of that attachment was to enable the creditor to satisfy his judgment by a levy with all the statute formalities and requisites. If any one step was omitted, no right under the attachment could exist. *Patterson* v. *Stewart*, 6 Watts & Serg., 527; Rawle on Cov., 301. The plaintiff could not waive any statute requisite. *Mitchell* v. *Kirtland*, 7 Conn., 231. The plaintiff was bound to wait until he sustained damage. *Booth* v. *Starr*, 1 Conn., 244; Rawle on Cov., 339. In cases where the covenant against encumbrances has been broken, only such damages can be recovered as are fairly and reasonably proved. The burden is upon the plaintiff to show what the outstanding encumbrance was really worth. The mere fact of payment is no evidence whatever, and only nominal damages could be recovered. Rawle on Cov., 293.

PARK, C. J. The defendant contends that an attachment of real estate creates no incumbrance upon the land, within the meaning of the covenant against incumbrances, until judgment has been rendered in favor of the attaching creditor, and the land has been set off on execution to satisfy the judgment. This claim is based upon the uncertainty which exists in such cases, whether the attachment will ever be followed by the levy of an execution upon the land. But there is no more uncertainty in such cases in this respect than in many cases of mortgages, whether the property will be eventually

foreclosed and the land taken for the debt, especially in those cases where mortgages are made to secure parties against future liabilities depending upon many contingencies. It would seem to follow, therefore, that if the claim is sound in respect to attachments, it ought to be sound in respect to such mortgages, and yet the latter are every where held to create incumbrances. But in this case the plaintiff did not redeem the land from the attachment till after judgment had been rendered in the suit in which it had been made. At that time it was morally certain that the land would be taken to satisfy the judgment, as there was no personal property on which an execution could be levied. It is true an attempt had been made to levy an execution upon the land, which had failed, and there was some uncertainty whether it would be renewed during the existence of the lien created by the attachment, owing to the ignorance of the party that the execution had not been duly levied. But this fact cannot in any way affect the case. The defendant had no right to presume that the defect in the levy would not be discovered in time for the levy of another execution. The law never creates a right in a party which is dependent upon the ignorance of another party in regard to his rights. It should be taken for granted that the party would discover that his levy was abortive, and would cause another to be made during the existence of the attachment lien.

It is clear that if the judgment in this case did not constitute the attachment an incumbrance upon the property, then an incumbrance, by our law, never can be created by an attachment. For nothing remained to be done but the levy of an execution, and the levy of an execution, by our law in a case like this, transfers to the execution creditor the immediate and absolute title of the execution debtor in the land set off upon the execution.

In some states the levy of an execution operates like a decree of foreclosure in the case of a mortgage. The execution debtor has the right during a certain period of time to redeem the land, and during such time the levy of course continues an incumbrance upon the land. But it is not so in

VOL. XLIII.—18

this state in cases of resident debtors. They have no right of redemption after the levy of the execution, and consequently the levy creates no incumbrance upon the land, for it transfers an immediate and absolute title. Rawle on Covenants for Title, p. 94, says, that "every right to or interest in land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance, is an incumbrance." An incumbrance therefore must be something less than the entire title which the debtor has to the property.

We are satisfied that the attachment in this case created an incumbrance upon the land, and the authorities are in accordance with this view. In *Harlow* v. *Thomas*, 15 Pick., 69, the court recognize an attachment as an incumbrance upon land. In *Norton* v. *Babcock*, 2 Met., 510, the court hold that a second attachment of all a debtor's right, title and interest in land, is an incumbrance on the land from the time it is made. It will be found upon examination that this case is exactly in point, as is also that of *Johnson* v. *Collins*, 116 Mass., 392. These cases were actions for breach of covenants against incumbrances, and the breach consisted in the fact that attachments were resting upon the lands at the time they were conveyed. We might cite other authorities upon this subject, but these are sufficient.

It appears in the case that the plaintiff conducted with reasonable prudence and care in regard to the interests of the defendant in the matter; that he had abundant cause for believing, and did believe, that the land would be taken to satisfy the judgment that had been rendered in favor of the attaching creditor, unless he paid and satisfied the same; and consequently, after he had made fruitless efforts to obtain instructions from the defendant in regard to the course which he desired him to pursue in the matter, he, in good faith, paid and satisfied the judgment, in order to free the land from the lien created by the attachment. In such circumstances we think the amount paid should be the measure of damages, no claim being made that it was greater than the value of the land attached. It was so held in the case of *Norton* v. *Babcock*, supra, in a similar case, and we think correctly.

We think in cases where judgment has been rendered in the suit in favor of the attaching creditor, and the owner of the land has conducted in good faith towards his covenantor in paying the amount of the judgment in order to free his land from the lien created by the attachment, the amount of the judgment should be the measure of damages, if the amount is less than the value of the land attached; but if greater than such value, then the value of the land attached should be the measure of damages.

We advise judgment for the plaintiff.

In this opinion the other judges concurred.