### JAMES B. BUCHANAN
*vs.*
### NELSON E. FLANDREAU

Court of Common Pleas    Fairfield County    File No. 43261

## MEMORANDUM FILED JUNE 3, 1943.

*Cummings & Lockwood,* of Stamford, for the Plaintiff.

*Hirschberg, Pettengill, Strong & Deming,* of Greenwich, for the Defendant.

CULLINAN, J. The plaintiff, a stock farmer, interested himself in the fall of 1941, as a prospective purchaser of Woodbury farm property owned by the defendant. Climaxing this interest, the plaintiff and the defendant, on November 12, 1941, entered into a written agreement (Plaintiff's Ex. A) wherein the plaintiff contracted to purchase no less than 23 acres of land and a number of farm buildings for an aggregate price of $9,250. An initial payment of $2,000 was made by the plaintiff upon execution of this agreement.

The material portions of the agreement, requiring consideration in a determination of this litigation, provided, in substance:

1. On or before January 2, 1942, at 10 o'clock a.m., the defendant was to tender the plaintiff a warranty deed for the premises.

2. Upon receipt of this deed, the plaintiff was to pay the balance of the purchase price, namely, $7,250.

3. Time was of the essence of the agreement.

4. The title to be delivered by the seller (defendant) was to be "a marketable title free and clear of all encumbrances including municipal liens and assessments and liability for assessments for improvements now constructed. . . .the title to be subject to all existing restrictions of record; seller, however, guarantees that there are no restrictions in any conveyance or plan of record affecting the premises which will prohibit the use and/or occupancy thereof."

5. In the event that such title could not be delivered by the seller (defendant) and in the event that the purchaser (plaintiff) was unwilling to accept such title as could be made, then, at the option of the plaintiff, such payments as had been made by him were to be refunded, together with the reasonable expense of examining the title and making survey.

6. In the event that the purchaser refused to complete the transaction, then payments made by him were to be forfeited to the seller as liquidated damages.

Following the execution of this agreement, the plaintiff directed that a search of title be completed by a competent and reputable member of the Bar of the State of Connecticut. The title report, subsequently prepared, disclosed a number of apparent defects. (Plaintiff's Ex. G.)   However, it was conceded by all parties in interest, at trial, that but two of these claimed defects of title merit consideration and atten- tion.   They were reported to the plaintiff by his title expert in the following language (Plaintiff's Ex. G):

"4. By warranty deed dated May 8, 1874, Maria Bishop, widow of and sole beneficiary under the will of Salmon Bishop, conveyed all her property to Mary T. Deming.   On July 11, 1874, Mary T. Deming quit-claimed one-half thereof to Henry H. Peck.   On the same day said Peck quit-claimed to Abner A. Deming (husband of Mary T.), 'one undivided half of all the estate conveyed to me this day by deed of Mary T. Deming. . . .'   The language used conveyed only one-half of one-half, that is, one-quarter, and therefore there is an out- standing one-quarter interest in said Henry H. Peck and his heirs or beneficiaries.   Said Henry H. Peck left a last will and testament from which it appears that his ultimate bene- ficiary was the Town of Woodbury for the purposes therein set forth."

"6. By agreement dated May 10, 1884, Laura W. Terrill, then owner, leased for all time to Timothy B. Terrill and his heirs and assigns, the right to enter and convey water from a spring south of the dwelling, the pipe to be inserted at least one foot above the pipe then in said spring. This still existing right constitutes an encumbrance."

Briefly and generally speaking, the controversy now runs in the following fashion: The plaintiff contends:

(a) He agreed to purchase the defendant's property on or before January 2, 1942, and the partial consideration for this undertaking was the defendant's agreement to deliver "a marketable title free and clear of all encumbrances."

(b) The defendant breached this agreement by reason of his inability to deliver "a marketable title free and clear of all encumbrances" in the light of the claimed defects known as exceptions 4 and 6 in plaintiff's Exhibit G, which exceptions have been quoted above in their entirety.

(c) Exception 4 constituted a valid encumbrance because it concerned itself with an outstanding record title to a one-fourth interest in the premises, which interest at the date of the execution of plaintiff's Exhibit A and on January 2, 1942, the date fixed for closing, was in the Town of Woodbury.

(d) Exception 6, also called spring right, constituted an outstanding estate in the premises in a third party by express grant. This estate at the date of the execution of plaintiff's Exhibit A and on January 2, 1942, the date fixed for closing, constituted a positive encumbrance which made impossible the conveyance of "a marketable title free and clear of all encumbrances."

(e) Since the defendant, on January 2, 1942, was unable to meet his contract, from the viewpoint of marketable title, then the plaintiff was justified in law, in refusing to proceed with his agreement to purchase.

In reply to these contentions, the defendant says, in substance:

(a) Exception 4 did not create an unmarketable title since the defect, if any, had been cured by adverse possession.

(b) The limitation on the use of the premises, created by exception 6 was a restriction within the clause in plaintiff's

Exhibit A providing "the title to be subject to all existing re-
strictions of record."

(c) · Assuming exception 6 be found to be not a restriction
of record, within the intendment of plaintiff's Exhibit A, but
an encumbrance which precluded the delivery of a marketable
title, then objection to this encumbrance was waived by the
plaintiff, who agreed to extend the date for closing until
April 2, 1942, to permit the defendant to correct title irregu-
larities or defects. (Amendment to defendant's special de-
fense.)

The plaintiff, in the present action, seeks to recover from
the defendant the amount paid on account of the purchase
price, together with the reasonable expense incurred by him
in having the title examined and reported upon. On the
other hand, the defendant seeks to retain, as liquidated dam-
ages, the amount paid by the plaintiff on account of the
purchase price.

I shall concern myself primarily with so-called exception 6.
This consideration suggests the following questions, answers
to which may prove wholly determinative of the litigation:

Did exception 6 constitute an encumbrance, so valid and
so real, as to preclude the conveyance of a marketable title
by the defendant?

Did exception 6 constitute a restriction of record within
the meaning of plaintiff's Exhibit A; that is, a restriction of
record to which plaintiff's title must have been made subject,
by reason of his agreement to accept a title "subject to all
existing restrictions of record?"

Assuming that exception 6 constituted an encumbrance as
opposed to a restriction of record, did the defendant, on or
before January 2, 1942, remove such encumbrance and thus
place himself in position to convey a marketable title?

Assuming that exception 6 constituted an encumbrance as
against a restriction of record, and assuming further that the
defendant did not remove such encumbrance on or before
January 2, 1942, did the plaintiff waive objection to this en-
cumbrance, by agreeing to extend the date for title closing, to
permit the defendant to negotiate for the release of the
encumbrance?

An "encumbrance", as the term was used in plaintiff's Ex-

hibit A, has been defined, in a general way, as "every right to or interest in land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance." *Kelsey vs. Remer,* 43 Conn. 129, 138. *See, also, Dyer vs. Scott,* 253 Mass. 430, 149 N.E. 146; *Simons vs. Diamond Match Co.,* 159 Mich. 241, 123 N.W. 1132; *Fraser vs. Bentel,* 161 Cal. 390, 119 Pac. 509.

That the grant or lease of the spring right by Laura W. Terrill to Timothy B. Terrill and his heirs and assigns, created an encumbrance on the land cannot be questioned.

The privilege of taking water from a spring or stream on the land constitutes an encumbrance. 4 *Tiffany, Real Property* (3rd ed. 1939) §1004.

By his agreement the defendant obligated himself to convey to the plaintiff a marketable title, free of all encumbrances, and yet, prior to the execution of plaintiff's Exhibit A, a perpetual encumbrance had been created on the land in question. Thus it may be said that the defendant was without power to comply with his contracted obligation. *Morgan vs. Smith,* 11 Ill. 194; *Mitchell vs. Warner,* 5 Conn. 497.

Furthermore, the question whether an outstanding right is an encumbrance must be determined by reference to the subject matter of the contract, the relation of the parties to it, and to each other, the notice on the part of the purchaser and, to some extent local usage and habit. *Rawle, Covenants for Title* (5th ed. 1887) §76. *See, also, Klippel vs. Borngesser,* 177 Wis. 4233, 188 N.W. 654.

The intention of the contracting parties is of great significance in an attempt to construe an agreement. Intent is to be determined by fair and reasonable construction in the light of circumstances surrounding the execution of the writing and in the light of the object of the parties in executing the contract. *New Haven Sand Blast Co. vs. Dreisbach,* 102 Conn. 169, 180; *Perkins vs. Eagle Lock Co.,* 118 id. 658, 663.

There can be little doubt but that the plaintiff and the defendant contemplated, on the date when plaintiff's Exhibit A was executed, that the plaintiff would receive a marketable title free from all encumbrances. Preliminary conversations and negotiations between the plaintiff and a selling representative of the defendant had not comprehended the existence of a spring right in the adjoining property owner. It

was not until after the search of title that the plaintiff became aware of the grant of the right to take water from the spring and of the right to lay and maintain a pipe for that purpose. Further, the best evidence of the fact that the parties did not contemplate a title, subject to the spring right, is to be found in plaintiff's Exhibit I, a letter from the defendant's attorney to the plaintiff's attorney and title searcher, wherein appears the following language: "On item 6 (exception 6—spring rights), concededly this spring right exists of record *and was omitted by error in the contract.*"

The free, continued and uninterrupted use of the spring was of considerable moment to the plaintiff. His activity and undertakings as a stock farmer required a generous use of an abundant supply of spring water.

The sharing of this essential farm asset might conceivably produce unreasonable or inequitable consequences. Parties should not be held to have intended unreasonable or inequitable consequences. *Volk vs. Volk Mfg. Co., Inc.,* 101 Conn. 594, 602.

Thus I am forced to conclude that the plaintiff and the defendant did not, at the execution of their agreement, anticipate that the plaintiff would be called upon to accept a title subject to a right, the exercise of which might well prove a serious threat, bordering on fatality, to the successful operation of the plaintiff's proposed stock farm.

The attempt by the defendant to force upon the plaintiff a title subject to a positive encumbrance cannot be sanctioned. It was never within the contemplation of the contracting parties that the title should be anything less than a "marketable title free and clear of all encumbrances." A present effort to characterize the spring right as an "existing restriction of record" finds no solid support in fact or in law.

Nor am I able to find sufficient credible evidence to support the defendant's theory of waiver. Time was of the essence of the agreement. The defendant, on January 2, 1942, was unable to meet the terms of his agreement, and as a matter of fact, at the date of trial, was unable to satisfy his contractual obligation since the spring right continued, without release or discharge, to remain an encumbrance on the land.' It is my opinion that the plaintiff, on January 2, 1942, was prepared, upon the tender of a proper deed, to pay the balance

of the agreed price. He was unwilling to delay the closing date. The law did not require him to extend the date of closing, and, in fact, he did not consent to an extension of time.

As has been previously indicated, the plaintiff, upon the execution of plaintiff's Exhibit A, paid to the defendant the sum of $2,000. In addition, the plaintiff was forced to expend $65 for his title survey, an amount for which he is entitled to reimbursement.

Judgment may enter for the plaintiff to recover of the defendant $2,065, together with interest in the sum of $186.65, and costs of suit.