SHERWOOD A. JONES v. STUART H. V. CARLSON

SUPERIOR COURT        NEW LONDON COUNTY        FILE NO. 18814

Memorandum filed March 29, 1950.

*Waller, Anderson & Smith,* of New London, for the Plaintiff.

*Butler, Volpe & Garrity,* of Manchester, *Kimberly Cheney,* of Hartford, *William J. Willetts,* of New London, and *Steele, Cheney & Hultgren,* of Hartford, for the Defendants.

COMLEY, J.  In 1923 the Titus and Bishop Land Company laid out a real estate development in the town of Waterford known as Mago Point.  Subsequently, numerous lots were sold by reference to a recorded map upon which were delineated

various roads and streets for the common use of the grantees. Also the deeds contained a uniform restriction against the erection of any structure within twenty feet of any road or street.

At some time prior to 1930 a building, now known as the Sunset Inn, was erected at the southeast corner of two streets designated on the development map as Boulevard and Avenue B. Just when this structure was built and who built it did not definitely appear in evidence, but in the summer of 1930 it was rented by Frederick W. Innes who operated it as a dance hall and restaurant. It is perhaps a fair inference that the building was erected by the Titus and Bishop Land Company, for in October, 1930, that company conveyed a tract to Innes consisting of fourteen numbered lots, and the building stood on the northwest corner of this tract. It is a substantial wooden structure and rests upon seventy-two concrete piers. The deed to Innes sets forth the uniform restrictions.

Innes owned the property until September 13, 1935, when he quitclaimed it to the Niantic Lumber Company. While he owned it, Innes glassed in an existing porch which ran along the west side of the building to within twenty feet of the northwest corner and, in 1934, he built a bunkhouse along the north side of the building. In 1935, the Niantic Lumber Company conveyed the premises to George T. Shepard, and the ownership remained in him or in his wife, Nellie Shepard, until May 1, 1944. While George T. Shepard was owner he extended the glassed-in porch to the northwest corner of the building and he also made some alterations and additions to the so-called bunkhouse on the north side.

On May 1, 1944, Nellie M. Shepard sold the premises to William E. Johnson and Stuart H. V. Carlson. The purchasers employed an attorney to search the title. It was then discovered that the west side of the building encroached very substantially upon the street known as Boulevard and that the north side of the building encroached to a much smaller extent upon Avenue B, this latter encroachment being only $15\frac{1}{2}$ inches in width at the northwest corner of the building and $11\frac{1}{4}$ inches at the northeast corner. Johnson and Carlson then opened negotiations with Earle W. Wadsworth who, in 1943, had purchased from The Titus and Bishop Land Co. all the unsold lots in the development and also the fee in the streets laid out on the map, for the purpose of obtaining title to those portions of the Boulevard and Avenue B upon which the building encroached. Wadsworth took the position that he could relocate

the Boulevard and convey to Johnson and Carlson that portion of the original layout affected by the encroachment but that he was powerless to do anything with respect to Avenue B because of the interests which other lot owners had acquired in that street. Accordingly, on May 26, 1944, for a consideration of $750 Wadsworth deeded to Johnson and Carlson that portion of the original Boulevard upon which their building stood, but nothing was done about the encroachment on Avenue B. During these negotiations, nothing was said or done about the building line restriction.

On July 25, 1944, Johnson conveyed his interest to Carlson, the present defendant.

In November, 1944, the plaintiff became interested in the property and on or about the first of December he visited the site with the defendant. The defendant said nothing about the encroachment on Avenue B but indicated that there was room enough on the north side of the building for the parking of employees' cars and delivery trucks. After some negotiations, a bond for a deed was executed on January 6, 1945, and the sale was later consummated by a warranty deed from the defendant to the plaintiff dated January 19, 1945. In the bond, the plaintiff acknowledged that he had examined the earlier deeds to Johnson and Carlson and was familiar with their contents and, in the warranty deed, there was an express reference to the restrictions in question. The plaintiff did not have the title searched and he had no actual knowledge of the nature of the restrictions or that they had in any way been violated. He first acquired this knowledge in 1946 when Wadsworth objected to the use which he was making of Avenue B. This led the plaintiff to have his title examined and to have a survey made of his property and he then learned of the encroachment on Avenue B and of the possible violation of the building line restrictions. After efforts to adjust the matter had failed he instituted the present action.

The first count is based upon a claimed breach of the covenant against incumbrances contained in the warranty deed of January 19, 1945. The plaintiff insists that the covenant is breached both by the existence of the encroachment on Avenue B and by the location of the building within twenty feet of Boulevard and Avenue B and that he is entitled to damages to be measured by the cost of moving the building to the south and east to a point twenty feet from both streets.

Ordinarily, a breach of the covenant against incumbrances is claimed because of the existence of some outstanding interest of record which is not disclosed in the deed and expressly excepted from the operation of the covenant. *Reed* v. *Stevens,* 93 Conn. 659, 662; *Staite* v. *Smith,* 95 Conn. 470, 472. That is not true in this case. The breach here claimed is not based upon an undisclosed incumbrance of record but upon the physical location of the building in such a manner that it encroaches upon Avenue B and is within twenty feet of the Boulevard and Avenue B. There is apparently no case in Connecticut which decides whether the covenant is broken under such circumstances. There is very little authority elsewhere, but such cases as there are support the plaintiff's position. *Kennell* v. *Tandy,* 126 Ore. 528; *Fehlhaber* v. *Fehlhaber,* 80 Misc. (N. Y.) 149.

In *Kelsey* v. *Remer,* 43 Conn. 129, 138, an incumbrance is defined as "every right to or interest in land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance." And in *Reed* v. *Stevens, supra,* 663, incumbrances are defined as "lawful claims impairing the estate granted." In the present case, all the owners of lots in the Mago Point development have an interest in the plaintiff's land, for the right to enforce restrictive covenants is in this state recognized as an easement. *Stamford* v. *Vuono,* 108 Conn. 359, 364.

It, therefore, follows that there has been a breach of the covenant against incumbrances in this case to the extent that the value of the estate granted to the plaintiff is diminished by the encroachment on Avenue B and by the violation of the building-line restrictions. Obviously that value is diminished only to the extent that the plaintiff may be compelled to change the location of his building. That involves a consideration of the defense of adverse possession. In other words, to what extent have the other lot owners the right to enforce the restrictions or compel the removal of the encroachment?

First, as to the building-line restrictions. The Sunset Inn was erected at some time prior to 1930. From the moment of its completion it was less than twenty feet from the Boulevard and from Avenue B. With the exception of the relatively minor additions of the twenty-foot section of the glassed-in porch and the bunkhouse, it has stood substantially as it now stands and for considerably more than fifteen years it has constituted a continuing violation of the building-line restriction. No lot owner

has complained or taken any steps to compel a relocation of the building. Therefore, the plaintiff, through his possession and that of his predecessors in title has acquired the prescriptive right to maintain his building within the twenty-foot lines and the violation of the restrictive covenant does not constitute an incumbrance.

The encroachment on Avenue B stands upon a different basis. The addition to the north side of the building was made by Innes less than fifteen years prior to the commencement of the action. This encroachment constitutes a valid outstanding incumbrance upon the plaintiff's estate and constitutes a breach of the covenant. To remove the encroachment will cost the plaintiff $1548.00. The plaintiff's claim that there will be further consequential damage in the amount of $675.00 is disallowed.

The second count is based upon fraudulent concealment by the defendant of the encroachment on Avenue B and of the building-line violations. When the defendant negotiated with Wadsworth in 1944, I find that he learned, not only of the encroachment upon the Boulevard but also of the encroachment upon Avenue B. When, later in that year, he showed the property to the plaintiff, it was clearly his duty to disclose this fact to the plaintiff. He not only failed to do this but he actually misrepresented to the plaintiff the conditions obtaining on the north side of the building. For this he is liable. *O'Neill* v. *Conway*, 88 Conn. 651; *Slachter* v. *Olderman*, 116 Conn. 156.

The plaintiff's damages for this cause of action are the same as under the first count.

The defendant was not guilty of any concealment or misrepresentation with respect to the building lines for he did not know of the restrictions or of any violation thereof. Moreover, even if he did, the plaintiff has suffered no damage on this score for the reasons hereinbefore discussed under the first count.

The issues on the third count are found for the defendant.

Judgment is rendered for the plaintiff to recover the sum of $1548.00 on the first and second counts and for the defendant on the third count.