## Garrison, et al v. Clark, et al.

(Decided January 16, 1913.)

### Appeal from Warren Circuit Court.

1. Executions—Incumbered Property—Rights of Execution Plaintiff. —Where property incumbered by a lien is levied on under an execution, the execution plaintiff, after the levy, and without having the property sold, may, as provided in section 1709 of the Kentucky Statutes, bring a suit in equity to enforce his execution lien.

2. Revivor—Death of Party After Land Sold Under Decree.—Under section 521 of the Kentucky Statutes, if a party to the action shall die after the sale has been confirmed, it will not be necessary on that account to revive the action, but such sale, when perfected by a deed, will be effectual to pass title to the same extent as if all the parties were living.

3. Limitation—Life Tenant.—Where land in which a widow had dower was sold subject to her dower, limitation did not begin to run against the purchaser at the sale as to the interest in the land covered by the widow's dower until her death.

BRADBURN & BASHAM and W. B. GAINES, for appellants.

NERGE CLARK and WRIGHT & McELROY, for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is a controversy over the ownership of lot No. 74 in the city of Bowling Green.    The Clarks, who are the appellees here, brought suit in the lower court to recover this lot from the appellant Garrisons, and in the lower court they were adjudged to be the owners of one-third of the lot, and also to have a lien upon it for certain taxes.

A reversal of this judgment is asked by the Garrisons: (1) Because the deed under which the Clarks claim owner-

ship did not invest them with anything but a lien on the property; (2) Because the action is barred by limitation; (3) Because the court erred in adjudging the Clarks a lien for taxes. They further say that the lot was redeemed by the Garrisons after the sale and purchase by, the Clarks. The Clarks assert title under James Clark, doing business under the name of James Clark & Co., and H. T. Clark, and the Garrisons are the children of A. W. Garrison.

It appears from the record that in 1871 James Clark & Co., and H. T. Clark brought a suit in equity in the Warren Circuit Court against A. W. Garrison, S. A. Satterfield, and Brown, Calhoun and Stubbins. In this suit they averred, in substance, that they had obtained judgments against Garrison and Satterfield, upon which executions had issued, and which were levied on lot No. 74 in Bowling Green, but no sale was made under the execution because the lot was incumbered by liens. They averred that Brown, Calhoun and Stubbins had liens on the property, and they attacked the mortgage of Calhoun as fraudulent and asked that the other parties be required to assert their liens.

In 1872 a judgment was rendered in this action in favor of the Clarks against Garrison and Satterfield ordering the sale of lots No. 74 and 80, subject to the debts of Brown, Calhoun and Stubbins. By virtue of this judgment the Master Commissioner in 1874 sold lots 74 and 80 to H. T. Clark, and it seems that they were sold subject to the liens before mentioned. Soon after this, and in 1874, the report of sale was confirmed, and no other steps were taken in the action, which continued on the docket until 1881, when the commissioner conveyed, as recited in the deed, lots No. 74 and 80 to James Clark and Company and H. T. Clark jointly, and this deed was in due time recorded in the office of the county clerk.

Although the title came in this manner into the possession of the Clarks in January, 1881, they made no effort to take possession of lot No. 74 until this suit was brought in March, 1911. A. W. Garrison, who resided on lot No. 74 when the judgment was rendered in the action of the Clarks, continued to reside with his family on the lot until his death in 1877, and after his death his widow and children continued to reside on the lot until the death of the widow in 1905, and since then the children have been in possession of it.

It will be observed that A. W. Garrison died before

the Commissioner's deed to the Clarks was made, but his widow had a dower interest in the lot of which she had never been divested, and it seems that no effort was made to set apart her dower and that she and her children remained in the undisturbed possession of the entire lot until this suit was brought.

When land, upon which there are incumbrances, is levied upon, under an execution, section 1709 of the Kentucky Statutes, which is the same as the statute in force in 1871, provides that the interest of the defendant in the property may be levied on and sold, subject to the incumbrances, and that the purchaser at the sale acquires a lien on the property. It is further provided that courts of equity shall have power to make such orders as may be necessary to preserve the rights of all interested parties.

Under this statute it is not necessary to the validity of the execution lien that a sale of the property shall be made under the execution levy. An execution plaintiff who levies his execution upon incumbered real estate may, without a sale under his execution, bring an action in equity, based on his execution levy, making defendants to the action all persons who have incumbrances on the property, and the court in which the action is brought may then order a sale of the property and make such orders and enter such judgments as are necessary to protect the rights of all parties in interest. It is not essential that the execution plaintiff shall sell the property under his execution before bringing an action in equity, although he may do so. Vanmeter v. Savage, 22 Ky. L. R., 1476; Jones v. Allen, 88 Ky. 381.

Therefore, the Clarks pursued the proper practice in bringing an action in equity to enforce their execution liens and in making defendants to this action the execution defendants and the lien creditors, and the judgment of the court and the sale made thereunder, which was confirmed without objection, and the deed made in pursuance thereof in 1881, invested the Clarks with a good title to this lot, subject to the dower interest of Mrs. Garrison. In making this statement we have not overlooked the question raised by counsel for appellants that, as A. W. Garrison died after the land was sold under the decree and before the deed was made, it was indispensable that there should have been a revivor of the action against the heirs of A. W. Garrison to give the court authority to execute the deed. The General Statutes of Kentucky

were in force when these proceedings were had, and it is provided in substance in section 35 of chapter 24 which is the same as sec. 521 of the Ky. Stat., that if by the judgment of the court real estate shall be sold, and any party to the action shall die after the sale has been confirmed, it will not be necessary on that account to revive the action, but such sale when perfected shall be effectual to pass the title to the same extent as if all the parties were living.

We think this statute clearly disposes of this question adversely to the contention of counsel. The case of Gill v. Hewett, 7 Bush, 10, was decided before the General Statutes took effect, and the opinion shows that the statute construed in that case is very different from the section of the General Statutes applicable to this case.

In reference to the plea that A. W. Garrison and Clark entered into an agreement by which Garrison had the right to redeem lot No. 74, and that in pursuance of this agreement it was redeemed by the payment of the sum stipulated, the record shows that there was an agreement in writing between H. T. Clark and Garrison & Satterfield, by which H. T. Clark agreed to convey to Garrison & Satterfield the lot purchased by him in August, 1872, when they had paid certain debts mentioned in the agreement, and it is further shown by the receipts that Garrison did pay to Clark some $2,300, but the evidence fails to show that this agreement embraced lot No. 74, and aside from this it does not appear that Satterfield or Garrison paid the amount stipulated in the agreement as necessary to be paid before Clark would convey the property to them. That this agreement did not have reference to lot No. 74 is also made plain by the fact that the agreement speaks of permitting Garrison & Satterfield to redeem the lot purchased by Clark in August, 1872, and the record shows that lot No. 74 was not sold until 1874, something like a year after the agreement was entered into.

The next ground assigned for reversal is that the action of the Clarks to recover the lot was barred by the fifteen and thirty year statute of limitation. It is true this action was not brought to recover the lot until more than thirty years after the deed was executed conveying to the Clarks the lot, and it is also true that during all this period of time the Garrisons were in the actual possession of the lot. Under these circumstances if the right of action to recover possession of the lot accrued to the Clarks when the deed was made in 1881, there could be

no question that the statute of limitation would furnish a complete bar to the action. But Mrs. Garrison had a dower interest in the lot until her death in 1905 and as to the undivided one-third of the lot in which she had a dower interest the right of action to recover possession did not accrue until her death. At any time after the death of A. W. Garrison in 1877 the Clarks could have instituted proceedings for the purpose of having set apart to Mrs. Garrison her dower interest and could have taken possession of the other two-thirds, but they could not have disturbed her possession as to the one-third. We think, therefore, that as to two-thirds of the lot the plea of limitation presented a good defense but as to one-third it did not, and this was the view taken by the judge of the lower court upon this question.

The remaining matter to be considered relates to the lien for taxes. It appears from the judgment of the lower court, and we do not understand that any question is raised as to the correctness of this judgment in so far as it speaks of the facts connected with the taxes, that there was assessed against this lot for the years 1902, 1903, 1904 and 1905, for state and county purposes, taxes amounting to $73.86, and that in May, 1906, the sheriff sold the lot for these taxes and it was bought by the Clarks. And it also appears that in January, 1904, the lot was sold for city taxes and bought in by Clark for $22.85.

Upon this showing the judgment appealed from gave the Clarks a lien on the undivided two-thirds of the lot to secure the payment of two-thirds of the taxes. We think this was correct. Under the revenue statutes applicable to both state and city taxes, when real estate is sold for taxes the purchaser at the tax sale is entitled to a lien upon the property to secure the tax paid by him, with interest thereon. When it appears that the tax so paid was in fact due, we do not know any case in which the purchaser was denied the return of his money with interest. It might be true that the property was assessed in the name of Mrs. Garrison, who only owned a life interest in a part of the property, but an error or irregularity of this character will not deprive the purchaser at the tax sale of his right to the money paid out by him with interest. It frequently happens that property is assessed against the owner of an interest therein who might not be liable for the whole tax, but if the property itself is liable for the tax, the fact that the assessing officers have

committed some error, will not be allowed to relieve the property of the lien for the tax that was justly due.

The judgment is affirmed.