## Hodges et al. v. Quire.

June 8, 1943.

Bailey P. Wootton and Joseph C. Jones for appellants.

Wiley C. Marshall for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

This is an appeal from a judgment of the Franklin circuit court adjudging to the appellee, Mary Belle Quire, a prior lien on a house and lot in the Thorn Hill subdivision, Franklin county, Kentucky, belonging to the appellants, Anna Hodges and the collaterial heirs of her deceased husband H. S. Hodges, to secure a judgment of the Jefferson County Quarterly Court in favor of appellee against Anna Hodges and H. S. Hodges for the sum of $43.81 with interest and costs, which was entered in December, 1935. The judgment appealed from also dismissed the counter-claim of appellant William Hodges who sought to enforce a mechanics' and materialmen's lien upon the same property. After the entry of the judgment in the quarterly court, H. S. and Anna Hodges sold their property in the city of Louisville and on May 9, 1939, they purchased from the Franklin County Board of Education certain property situated in the Thorn Hill subdivision in Franklin county consisting of a lot and building thereon formerly used for public school purposes. The deed was made jointly to H. S. and Anna Hodges. On August 28, 1939, an execution issued from the Jefferson circuit court on the quarterly court judgment and directed to the sheriff of Franklin county who on September 11, 1939, levied the same upon the Thorn Hill property of appellants and made his return thereon which was duly recorded in the office of the circuit court clerk of Franklin county.

In December, 1939, appellee brought this action in the Franklin circuit court against Anna Hodges, widow of H. S. Hodges, deceased, and his brothers and sisters and their respective husbands and wives, setting out the issuance and levy of the execution on the property of H. S. and Anna Hodges in the manner stated above, and asserted that by reason thereof she thereby acquired a prior and superior lien on said property to secure the payment of her judgment debt evidenced by the judgment and execution. She further stated that H. S. Hodges died intestate June 12, 1939, without issue, leaving as his next of kin and only heirs at law his widow,

Anna Hodges, and several brothers and sisters and their respective husbands and wives (naming them), and that no administration has been had upon the estate of H. S. Hodges and no settlement of his estate made and that the judgment upon which the execution issued was rendered against H. S. and Anna Hodges jointly, no part of which has been paid, and that plaintiff's lien under the execution exists against the whole estate; that the property upon which the execution was levied was purchased by H. S. and Anna Hodges prior to the death of H. S. Hodges and the judgment upon which the execution was issued was rendered long prior to the purchase or acquisition of the property by H. S. and Anna Hodges which was conveyed to them jointly and so held by them at the time of the death of H. S. Hodges, and that Anna Hodges owned an undivided one-half interest in the property and is also entitled to her dower interest in the one-half interest of her deceased husband, and that the deceased's brothers and sisters are each entitled to share a one-seventh interest in the estate of their deceased brother, subject to the dower interest of the widow, Anna Hodges, but the same is subject first to the payment of the debts of H. S. and Anna Hodges. She further set out that the property consisted of a lot and house thereon of the value of $3,000, but the property cannot be divided among those entitled to an interest therein without materially impairing its value, and the lien of plaintiff against the property may not be enforced except by a sale of the whole property and asked that same be sold and a sufficient amount of the proceeds thereof be applied to the payment of her judgment debt, interest and costs. She prayed an order directing a settlement of the estate of H. S. Hodges and that the real estate be sold and the proceeds thereof applied and distributed as indicated above.

William Hodges and his wife, Jessie Hodges, filed their answer, counter-claim and cross-petition in which they denied the allegations of the petition and for their counter-claim against appellee, and for cross-petition against all the other defendants (brothers and sisters of William Hodges) they alleged that in June, 1939, they entered into a contract with Anna Hodges pursuant to which they furnished labor and material to repair the schoolhouse owned by H. S. and Anna Hodges in order to convert it into an apartment building and expended the sum of $1,500 for material and $1,000 for labor, aggregating the sum of $2,500, which amount was still due

and unpaid. They stated further that on November 22, 1939, William Hodges filed in the office of the Franklin county court clerk a mechanics' and materialmen's lien setting out the material and labor furnished and the cost thereof and a description of the property, etc., as required by Sections 2463 to 2468 inclusive, Carroll's Kentucky Statutes. A copy of the statement of the lien was filed with the petition. They prayed that their answer be made a counter-claim against appellee and a cross-petition against their codefendants, and that appellee's petition be dismissed and that they be adjudged a prior lien against the property to secure the payment of $2500, the sum expended thereon for labor and materials.

Appellee filed her reply to the answer, counter-claim and cross-petition in which she denied that the cross-petitioner, William Hodges, furnished labor or material in the reconstruction of the building in the amount of $2,500 or any other sum, or that the alleged work and repairs were done pursuant to any contract with Anna Hodges, and further denied that the owners of the property were indebted to the cross-petitioners in any sum or amount for the alleged repairs, labor, material furnished, etc., or that they are entitled to a superior or any other lien upon the property to secure their alleged lien. Appellee further alleged affirmatively that if the cross-petitioners furnished any material or performed any labor in the improvement of the property they did so with the knowledge of the existence of the debt of the plaintiff against H. S. and Anna Hodges, and that the money used or expended in the repair or reconstruction of the building was the money, property and estate of H. S. Hodges or that of his wife, Anna Hodges, which was fraudulently placed in the keeping of the cross-petitioners in an effort to fraudulently hide and conceal it from the plaintiff and avoid the processes of the court in the collection of plaintiff's claim. The affirmative allegations of the reply were controverted by rejoinder, thus completing the issues. No answer or other pleading was filed by Anna Hodges or any of her codefendants, except that of William Hodges and his wife as set out above. Anna Hodges testified as a witness in the case and in her testimony she did not deny the existence of the debt to appellee evidenced by the Jefferson Quarterly Court judgment upon which the execution issued.

An order was entered referring the cause to the master commissioner with directions to advertise for

claims against the estate of H. S. Hodges, deceased, and to report any claims presented including the claim of appellee against the decedent and Anna Hodges jointly, and to report any valid liens against the property owned jointly by H. S. and Anna Hodges and the priority, if any, as regards liens, and any evidence concerning the same. The commissioner filed his report in which he in part said:

> "The claim of the plaintiff is based on a judgment dated November 19th, 1936, entered by the Jefferson Quarterly Court on which transcript appears to have been taken to the Jefferson Circuit Court, and execution was issued and levied on the house and lot in Franklin County.

> "The claim of Wm. Hodges is for labor and materials furnished and used on this same house and lot; and the direction is to determine any priorities between these two claims. * * *

> "The execution appears to have been issued after the death of the defendant H. S. Hodges; and is void as to him; but valid as to a living defendant. Letton's Adm'r v. Rafferty, 154 Ky. 278, 157 S. W. 35. Therefore the execution is valid as against Anna Hodges defendant. * * *

> "When the execution had been levied, and so returned and recorded, in my judgment the lien of the execution came under the exception to the lien law: 'Provided that such lien shall not take precedence of a mortgage or other contract, lien or bona fide conveyance for value without notice, duly recorded or lodged for record' etc., Ky. Stat. § 2463.

> "I therefore report that I consider the recorded execution a lien prior to the Hodges lien filed November, 1939. For had Hodges filed the statement of intention, which the act permits, he might still have been ahead of the execution, even if recorded. For the first to go to record is the first in point of time.

> "Of the two claims filed with me, I consider the recorded levy of the execution prior to the lien of William Hodges for labor and materials."

The commissioner discussed the law and facts connected with the claims of the respective parties and cited

authorities for his determination of the various points and also filed an attested copy of the judgment of the Jefferson Quarterly Court (on which the execution issued) attested by both the clerk of the quarterly court and the clerk of the circuit court. Thus it is seen from that part of the commissioner's report, quoted above, that he found as a matter of law that because of the issuance and levy of the execution on the property prior to the filing of appellants' materialmen's lien, appellee thereby acquired a lien against the property superior to the lien of appellants, basing his finding upon Section 2463, Carroll's Kentucky Statutes, 1936 edition, which reads in part as follows:

> "and provided that such lien shall not take precedence of a mortgage or other contract, lien or bona fide conveyance for value without notice, duly recorded or lodged for record according to law, * * *."

The commissioner's report was filed September 2, 1940, but no exceptions were filed thereto, and on September 9, 1940, an order was entered confirming the report. Following the filing of the commissioner's report and the confirmation thereof by the chancellor, the evidence was taken by depositions which are voluminous and more or less contradictory. The cause was submitted for judgment and in January, 1942, the chancellor rendered an opinion and judgment in accordance with the commissioner's report and adjudged that appellee's lien on the property was valid, prior and superior to the lien claimed by appellant William Hodges and granted the full relief prayed in the petition. In the opinion written by the chancellor he quoted that part of the commissioner's report which we have quoted above and recited that the commissioner's conclusion or finding "is concurred in by the court," thus indicating that he determined the case upon Section 2463, Carroll's Kentucky Statutes, as construed and applied by the commissioner; that is, since appellee's execution was levied prior to the filing of appellants' notice of lien, appellee thereby acquired a first lien.

That part of Section 2463 of the Statutes, quoted above, has not heretofore been construed by this court, but it has been construed by the U. S. District Court, Western District for Kentucky, and by the U. S. Circuit Court of Appeals, Sixth Circuit, In re Graves' Estate, 27 F. Supp. 717, and the same case on appeal to the

circuit court of appeals, styled Egyptian Supply Co. v. Boyd et al. (In re Graves), 117 F. (2d) 608, 611. In that case the Egyptian Supply Company filed in the McCracken circuit court of Kentucky an action against R. W. Graves, seeking to recover $1,988.97 for merchandise sold and delivered to him. Simultaneously with the filing of the petition, it sued out and was granted an attachment pursuant to the provisions of Sections 196 to and including 212 of the Kentucky Code of Civil Practice, which attachment was levied on certain property with improvements thereon in the city of Paducah, Kentucky. Pursuant to the provisions of Sections 2358a-2 and 2358a-3 of Carroll's Kentucky Statutes, 1936 Edition, a lis pendens notice was filed by appellant, supply company, in the county court clerk's office of McCracken county. Subsequently, during the month of September, 1938, the appellees (exclusive of A. E. Boyd, trustee), pursuant to the provisions of Sections 2463 to and inclusive of Section 2468, Carroll's Kentucky Statutes, 1936 Edition, filed in the county court clerk's office of McCracken county mechanics' and materialmen's liens for labor and materials used in the erection, altering and repairing of houses on the real estate covered by the attachment. In November, 1938, Graves filed his petition in bankruptcy and was adjudged a bankrupt, and in that proceeding the question of priority of liens was involved between the creditors of the bankrupt, the attaching creditor contending that since its attachment was levied upon the property prior to the filing of the mechanics' and materialmen's lien it thereby acquired a superior lien under the provisions of Section 2463 of the Statutes, and the mechanics' and materialmen's lien holders contending that their lien was superior to that of the attaching creditor. The district court held that the mechanics' lien had priority over the attachment lien and on appeal to the circuit court of appeals the judgment was affirmed. It may be noted, in the case supra, the Egyptian Supply Company was claiming under an attachment lien, while in the case at bar appellee is claiming under an execution lien, but these two classes of liens are of equal dignity, since each class constitutes a statutory lien as distinguished from a contract lien.

In the opinion of the circuit court of appeals, supra, the writer of that opinion reviewed the history and development of the Kentucky mechanics' lien laws since the year 1839, including the various amendments thereto

and the construction placed thereon by this court and other courts. For convenience we here copy the pertinent parts of that opinion.

"Under Kentucky law, mechanics' and materialmen's liens are inferior to mortgages or other contract liens or bona fide conveyances for value created prior to notice of the mechanics' and materialmen's liens duly recorded or lodged for record according to law. Section 2463, Carroll's Kentucky Statutes, Baldwin's 1936 Edition.

"At the time appellant perfected its attachment lien, appellees were furnishing labor and material to the bankrupt for which they had an inchoate lien, but none of them had given constructive notice of having worked or furnished materials, by filing in the County Court Clerk's office a statement of the labor performed or material furnished or what they expected to do or to furnish. They subsequently filed the statements necessary to mature their inchoate rights to a lien as provided by the statute and their respective liens related back and took effect prior to the perfection of appellant's lien. It follows that their liens are superior unless appellant's lien falls within the phrase 'mortgage, or other contract lien' or bona fide conveyance for value.'

"Kentucky has had a mechanics' and materialmen's lien statute since 1839 (1839 Acts, General Assembly, Commonwealth of Kentucky, p. 83). That and later amendments to the statute were construed as creating a lien commencing with the work and continuing to enlarge pari passu with its progress, and no intervening lien or encumbrance could break its continuity or curtail its extent, which lien continued until six months after the completion of the work or the furnishing of materials. Amendments were made to the Act from time to time, varying the superiority of mechanics' and materialmen's liens and the time within which they were terminated. The language of the present Act first appeared in the Acts of 1896, ch. 29, p. 47, as follows: '* * * That such lien shall not take precedence of a mortgage or other contract lien, or bona fide conveyance for value without notice, duly recorded or lodged for record according to law, * * *.'

"The Act was again amended in 1910, ch. 64, p. 202, in some particulars. The above phrase was retained with the exception that a comma was inserted after the word 'contract' and omitted after the word 'lien.' The Act was further amended in 1912, ch. 115, p. 389, with the same phrase and punctuation as in 1910, and has since so continued in effect.

"It is a well settled rule that punctuation is a fallible standard of the meaning of a statute and is resorted to only as a last resort in construing doubtful statutes. Punctuation marks are no part of an Act and to determine legislative intent, punctuation will be disregarded or the phrase repunctuated if that be necessary in order to arrive at the natural meaning of the words employed. United States v. Shreveport Grain & Elevator Company, 287 U. S. 77, 83, 53 S. Ct. 42, 77 L. Ed. 175; Joy v. St. Louis, 138 U. S. 1, 32, 11 S. Ct. 243, 251, 34 L. Ed. 843.

"In carrying out legislative purpose which is the prime and sole object of all rules of statutory construction, the courts are not always confined to the literal meaning of a statute and to this end will disregard punctuation and may disregard the literal import of words used, when the reason of the law is indicated by its general terms and when adherence to its strict verbiage or punctuation will defeat its purpose. Commonwealth v. Fenley, 189 Ky. 480, 225 S. W. 154.

"The legislation with which we are here dealing is a beneficent statute enacted for the encouragement of building mechanics and materialmen and should be construed to effectuate its purpose. Trustees of Caldwell Institute v. Young, 2 Duv. 582, 63 Ky. 582. If the word 'contract' as used in the statutory phrase be treated as a noun instead of an adjective adding to the meaning of lien, it would make materialmen's and mechanics' liens inferior to all contract debts incurred by the property owner between the date of the commencement of the work and the filing of statutory notice of the lien. When a comma is placed after the word 'lien' instead of the word 'contract,' the statute makes the mechanics' and materialmen's lien subordinate to mortgages, contract liens or bona fide conveyances for value incurred before notice was duly recorded of the mechanics' and

materialmen's lien. It is clear it was the intention of the legislature to make mechanics' and materialmen's liens superior to all other claimants except those enumerated. The present attachment lien is clearly not within any of the phrases of the statute.

"The word 'lien' is a generic term and, standing alone, includes liens acquired by contract or by operation of law, but the context of the Present Act clearly indicates that it relates solely to a contractual lien, which is one arising out of a deliberate agreement between competent parties to place some particular property in lien to secure an indebtedness, and not a statutory lien which is a remedy given by law to secure the preference provided therein, but which does not exist however equitable the claim may be, unless the party brings himself within the provisions of the statute and shows a substantial compliance with all of its requirements. Appellant's lien was statutory.

"The statute, in giving precedence to a mortgage or other contract lien or bona fide conveyence, requires each of them to be 'for value.' An attachment lien for an antecedent debt is not given for value within the meaning of the act. Kentucky Lumber & Mill Work Co. v. Kentucky Title Savings Bank & Trust Company, 184 Ky. 244, 211 S. W. 765, 5 A. L. R. 391. * * *"

It is apparent that the comma appearing after the word "contract," as used in the statute, accounts for erroneous construction placed on the statute by the commissioner and chancellor in determining the priority of the liens involved in the present case. It may be noted that Section 2463, Carroll's Kentucky Statutes, now appears as Section 376.010, KRS, in which the comma is entirely omitted, which is in effect in harmony with the construction of the statute announced in the opinion supra. We think a strict and literal construction of the comma as it appears in Section 2463, Carroll's Kentucky Statutes, would be contrary to the legislative intent. It is our conclusion that the statute has reference to a contract lien, and since the levy of the execution created only a statutory lien, it is secondary to appellant's lien.

It is the further contention of appellants that appellee acquired no lien at all against the property under the

execution. It is first insisted that the "purported" execution is void because it was not shown that an execution had previously issued from the quarterly court and return of "no property found" and all steps taken required by Section 723 of the Civil Code of Practice. We find no merit in this contention. We do not think it was necessary for the execution to recite facts showing that the steps required by the Code, supra, had been taken. The principal sum of the judgment stated in the execution is less than $50, the minimum sum required to give the circuit court original jurisdiction, and it is recited in the face of the execution that it issued from the "Transcript Branch Division" of the circuit court, all of which indicate that the judgment had been rendered in an inferior court. The execution was regular on its face, and since it is presumed that officers discharge their duties according to law, the presumption is that the clerk of the circuit court would not have issued the execution except as authorized in Section 723 of the Civil Code of Practice or other legal authority. The execution being valid on its face, the burden was on defendants (appellants) to show its invalidity, which they failed to do. The execution having been issued after the death of H. S. Hodges, it is void as to him but valid as to the living defendant, Anna Hodges. Letton's Adm'r et al. v. Rafferty et al., 154 Ky. 278, 157 S. W. 35, Section 405, Civil Code of Practice.

The next contention is that if it be conceded that a lien did attach when the execution was issued, it did not remain in force after the sheriff returned the execution unless other executions were immediately issued and placed in the hands of the sheriff, citing Webster v. Industrial Acceptance Corp., 234 Ky. 613, 28 S. W. (2d) 959. In that case the execution was returned "no property found," which distinguishes it from cases like the present one where the execution is levied on property and a sufficient return upon the execution made, in which event the lien created by the levy is preserved although there is not a sale. Low v. Skaggs, 105 S. W. 439, 31 Ky. Law Rep. 1292; Garrison et al. v. Clark et al., 151 Ky. 565, 152 S. W. 581.

It is said in Low v. Skaggs, supra, that a suit in equity is not the appropriate proceeding to enforce an execution levy, since the power in the sheriff to enforce it by sale is ample. While this is the general rule, yet it is not a fixed and permanent rule applicable to all

cases. In the Garrison case, supra, it was held that where property encumbered by a lien is levied on under an execution, the execution plaintiff, after the levy, and without having the property sold, may, as provided in Section 1709, Carroll's Kentucky Statutes, bring a suit in equity to enforce the execution lien. In the present case Anna Hodges' interest in the property upon which the execution was validly levied, was encumbered by appellants' lien which was filed in the clerk's office previous to the institution of this action by appellee, which was not for the sole purpose of enforcing her lien acquired by the levy of the execution but also to settle the estate of H. S. Hodges. As a creditor of the estate of H. S. Hodges, appellee had the right to bring her action for a settlement of the estate at the proper time, which she did, and as an incident to or in connection with the settlement of the estate she had the right to have her lien adjudicated in the same action. See Jones v. Allen, 88 Ky. 381, 11 S. W. 289, 10 Ky. Law Rep. 962; Van Meter v. Savage, 60 S. W. 646, 22 Ky. Law Rep. 1476. Also, in Mason v. Southern Deposit Bank, 229 Ky. 728, 17 S. W. (2d) 1022, it was specifically held that an execution creditor may bring a suit in equity to enforce his execution lien, making all adverse claimants parties, and is not absolutely required to have a sale of the property under the execution levy to satisfy his claim.

Appellee insists that the evidence is insufficient to show that appellant William Hodges in truth and reality paid for or furnished labor and material in the reconstruction and repair of the building and that same was paid for by William Hodges out of the money and assets of the estate of H. S. Hodges. We do not think the evidence sustains this contention. It is sufficient to say that upon a review of the evidence we are convinced that it is amply sufficient to show that appellant did furnish the material and labor alleged in the petition and that he is entitled to a judgment on his cross-petition against his codefendants for the sum of $2,500 with a lien superior to that of appellee to secure the payment of the same. Appellee is also entitled to a lien against Anna Hodges' interest in the property, secondary to that of appellant, to secure the payment of her judgment debt with interest and cost.

For the reasons stated the judgment is reversed and remanded for proceedings consistent with this opinion.