**COMMERCIAL TRANSPORT CORPO-
RATION, Plaintiff,**

v.

**ROBINSON GRAIN COMPANY, Inc.,
Defendant.**

Civ. A. No. 6894.

United States District Court,
W. D. Kentucky,
Louisville Division.

Feb. 1, 1972.

E. Gerry Barker, Louisville, Ky., for plaintiff.

W. Robinson Beard, Louisville, Ky., Fenner Heathcock, Union City, Tenn., for defendant.

## FINDINGS OF FACT AND CON-CLUSIONS OF LAW

ALLEN, District Judge.

Several interesting questions are raised in this action which has been submitted to the Court for a decision on the papers, pleadings, exhibits, briefs, and oral arguments of counsel.

On March 10, 1971, plaintiff, a Delaware corporation, filed suit against the defendant, a Kentucky corporation with its principal place of business located in Hickman, Kentucky, praying for judgment in the amount of $16,965.52, together with interest from May 18, 1970, until paid.

On May 25, 1971, the plaintiff recovered a default judgment in the amount prayed for in its complaint. On June 14, 1971, a letter was written by counsel for plaintiff requesting that the Clerk of this Court levy an execution on the property of the defendant, and on June 24, 1971, the execution was levied by the United States Marshal.

On May 6, 1971, the Columbiana Seed Company, hereinafter referred to as Columbiana, and the John Blue Company, hereinafter referred to as John Blue, filed suit in the Fulton Circuit Court against the Robinson Grain Company, hereinafter referred to as Robinson. Attachments were issued on the real property owned by Robinson in Fulton County and levied by the Sheriff of that county on the same day.

On May 7, 1971, Columbiana and John Blue filed lis pendens notices in the of-

fice of the Clerk of the Fulton County Court.

On July 2, 1971, Hamilton Oil Company, hereinafter referred to as Hamilton, brought action against Robinson in the Fulton Circuit Court and had an attachment issued on Robinson's real property and levied by the Sheriff.

On July 16, 1971, a default judgment was entered by the Fulton Circuit Court in favor of Columbiana in the amount of $35,813.60 with six percent interest against Robinson, and the attachment previously levied was sustained. On that same date judgment was entered in favor of John Blue in the amount of $1,-712.59 with interest at six percent against Robinson and the attachment confirmed.

On July 23, 1971, suit was filed in the Fulton Circuit Court by Fall & Fall Insurance Agency, hereinafter referred to as Fall & Fall, against Robinson and an attachment was issued against Robinson's real property and levied by the Sheriff. On that same day a lis pendens notice was filed by Hamilton in the office of the Clerk of the Fulton County Court, and on July 27 of the same year a lis pendens notice was filed in the same office by Fall & Fall.

On August 7, 1971, judgment for Hamilton was entered by the Fulton Circuit Court in the principal amount of $1,592.-82 and the attachment sustained.

On the 9th of August the Master Commissioner sold the Robinson property pursuant to orders of the Fulton Circuit Court and received $95,000 from the sale. Four days later his report of sale was approved by the Court and no exceptions filed.

On August 18 the Fulton Circuit Court entered judgment in favor of Fall & Fall in the principal amount of $6,692.00 plus interest and sustained its attachment.

On August 19, 1971, plaintiff in the Federal Court action made a motion to intervene in the Fulton Circuit Court action, and this motion was sustained on September 1.

On September 22, 1971, motions were made by Columbiana, John Blue, Hamilton and Fall & Fall for partial distribution and a hearing was set for September 29 on those motions, but two days prior thereto The Honorable James F. Gordon, Chief Judge for the Western District of Kentucky, issued an order of attachment which was served on the Clerk of the Fulton Circuit Court. However, by agreement a partial distribution of the proceeds of the Fulton Circuit Court sale was ordered on the 29th of September to pay a mortgage lien of the Old & Third National Bank, there being no objections thereto by any of the parties.

On November 11, 1971, Columbiana, John Blue, Hamilton and Fall & Fall were allowed to intervene in this action.

It is admitted by the plaintiff that it filed no lis pendens in the office of the Clerk of the Fulton County Court, and it is further established that none of the intervening petitioners in this action had any actual notice of the claim of plaintiff until plaintiff made its motion to intervene in the Fulton Circuit Court.

At a conference held by the Court and counsel for the parties, the Court inquired as to whether or not the Fulton Circuit Court wished to go ahead and adjudicate the matters which had been submitted here since it was the thought of this Court that the matters involving interpretation of Kentucky law might well defer to the judgment of the Kentucky Circuit Court. However, as the Court understood, the response of counsel was to the effect that the Fulton Circuit Court had no particular desire to proceed further in the matter at this time and that it would be appropriate for this Court to enter a judgment on the merits.

██ It is contended first by the petitioners Columbiana and John Blue that their attachment liens against Robinson are clearly superior to the execution lien of the plaintiff. Since it is undisputed that the attachment liens of John Blue and Columbiana were issued and levied on May 6, 1971, some nineteen days pri-

or to entry of judgment for plaintiff in the Federal Court and some six weeks prior to the actual levy on property of Robinson by the United States Marshal, it is clear that the liens of Columbiana and John Blue are superior and prior to plaintiff's execution lien. See KRS 425.-270 and KRS 426.120. Brown's Adm'r. v. Gabhart, 232 Ky. 336, 23 S.W.2d 551, and Husbands v. Jones, 72 Ky. 218 (1872). See also Peck v. Trail, 251 Ky. 377, 65 S.W.2d 83. As stated in Hodges v. Quire, 295 Ky. 78, 174 S.W.2d 9, at page 14, attachment and execution liens are of equal dignity, both being statutory creatures. Therefore, it follows that the principle of first point of time, first in priority, applies to the liens of John Blue and Columbiana.

Hamilton and Fall & Fall contend that they are entitled to priority over Commercial Transport Company because Commercial Transport did not file a lis pendens and they did not have actual notice of Commercial's claim against Robinson's real estate.

KRS 382.450, Subsection (1), provides as follows:

"(1) No attachment or execution, nor any levy or sale under either, shall in any manner affect the right, title to, or interest of a subsequent purchaser, lessee or encumbrancer without notice thereof of any real estate or any interest therein upon which such attachment or execution is levied, except from the time there is filed, as provided in KRS 382.440, a memorandum, showing the number and style of the action in which the attachment or execution issued, the court from which it issued, the number, if any, of such attachment or execution, the date thereof, and the name of the persons in whose favor and against whom it issued."

In addition to that, KRS 382.440, Subsection (1), provides as follows:

"(1) No action, cross-action, counterclaim, or any other proceeding, except actions for forcible detainer or forcible entry or detainer, commenced or filed in any court of this state, in which the title to, or the possession or use of, or any lien, tax, assessment or charge on real property, or any interest therein, is in any manner affected or involved, nor any order nor judgment therein, nor any sale or other proceeding, nor any proceeding in, nor judgment or decree rendered, in a district court of the United States, shall in any manner affect the right, title or interest of any subsequent purchaser, lessee, or encumbrancer of such real property, or interest for value and without notice thereof, except from the time there is filed, in the office of the county clerk of the county in which such real property or the greater part thereof lies, a memorandum stating;

(a) The number of the action, if it is numbered, and the style of such action or proceeding and the court in which it is commenced, or is pending;

(b) The name of the person whose right, title, interest in, or claim to, real property is involved or affected; and

(c) A description of the real property in the county thereby affected."

It has been held that all that is required of the execution or attachment creditors in order to perfect a lis pendens notice is to follow the provisions of KRS 382.450. See Donacher v. Tafferty, 147 Ky. 337, 340–341, 144 S.W. 13 (1912).

The real question involved is what the legislature meant by the use of the word "encumbrancer" in KRS 382.-450 and KRS 382.440. It is the contention of the intervening petitioners, Hamilton and Fall & Fall, that this word refers to execution and attachment creditors as well as to mortgagees. The plaintiff contends to the contrary.

Black's Law Dictionary, 4th Edition 1957, at page 908, defines "incumbrance", which is synonymous with "encumbrance", as any right to, or interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee. In the next paragraph the word "incumbrance" is

defined as a claim, lien, charge, or liability attached to and binding real property. Following that definition, the dictionary states that an incumbrance may be a judgment lien, citing Bowman v. Franklin Fire Insurance Co., 40 Md. 620, 631, or an attachment, Kelsey v. Remer, 43 Conn. 129. In view of these definitions, it would appear that Hamilton and Fall & Fall are encumbrancers within the meaning of the statutes.

The Court has examined the many cases cited by the parties and particularly by the petitioners involving this question and has found none to be exactly on point. However, in the case of Burton-Whayne Co. v. Farmers' & Drovers' Bank, 130 Ky. 389, 113 S.W. 445, 114 S.W. 288, we find a holding which is rather persuasive. In that case an attachment was levied on March 13, 1907. Notice of filing the attachment was filed on March 15, 1907. On March 26, 1907, a person named Stutz and other creditors filed attachments. They argued that there was a technical defect in the lis pendens notice and that therefore their subsequent attachments took priority over the prior attachment. The Court of Appeals said that the question is "did Oscar Stutz and others file their attachment with notice of the prior attachment?" The Court held that the prior lis pendens notice was on file and that the date of filing of the attachment was fastened to the lis pendens notice and, therefore, the prior attachment had precedence since they were on notice of the prior attachment lien. The Court did not say what would have been its ruling if it had held that there was a sufficient notice of lis pendens filed, but the inference seems to be that if the notice was inadequate or had not been filed then the subsequent attachment creditors would have prevailed.

Plaintiff contends in its brief that the attachments issued by Columbiana and John Blue were defective. The Court has examined the copies of the complaints and attachment bonds filed by these intervenors in the Fulton Circuit Court

and found that they are in compliance with applicable statutory and case law.

In conclusion, it might be added that equity aids the vigilant. Commercial Transport was not vigilant and did not file a notice of lis pendens in the Fulton County Court which would have preserved its rights as against Hamilton and Fall & Fall. Hamilton and Fall & Fall on the other hand were vigilant and did take the steps required by statute to perfect their liens.

In accordance with this opinion, the Court will sign a Judgment identical in its wording to the Order tendered by intervenors except for the fact that the Court has designated it a Judgment believing this to be more appropriate.