**KINSER SHEET METAL, INC.,**
**Appellant,**

v.

**Charles N. MORSE and Linda L.**
**Morse, Appellees.**

Court of Appeals of Kentucky.

Feb. 17, 1978.

Discretionary Review Denied June 6, 1978.

Chester I. Bays, Bowling Green, for appellant.

Michael A. Owsley, English, Lucas, Priest & Owsley, Bowling Green, for appellees.

Before HOWERTON, REYNOLDS and LESTER, JJ.

REYNOLDS, Judge.

The appellant, Kinser Sheet Metal Inc., a subcontractor, appeals from an order of Warren Circuit Court which dismissed its action to enforce a mechanics' and materialmen's lien.

Appellees, Charles and Linda Morse, owners of a lot, had contracted with D & S Construction Company for the erection of a single family dwelling. D & S, by subcontract, engaged appellant to furnish materials and labor which it commenced on September 24, 1976 and ended on November 15, 1976. Appellees, during the interim, moved into the unfinished dwelling on November 12, 1976. No contract existed between appellant and appellees. D & S became insolvent, and notice of intention to file a mechanics' lien was given by appellant to appellees on December 28, 1976, and its lien was filed and recorded on January 5, 1977.

Appellant maintains that K.R.S. 376.-010(3) is controlling rather than K.R.S. 376.-010(4) (enacted 1974); the latter subsection provides:

No person who has not contracted directly with the owner-occupant or his authorized agent shall acquire a lien under this section on an owner-occupied single or double family dwelling or the appurtenances or additions thereto unless he notifies in writing the owner-occupant of the property to be held liable or his authorized agent not more than ten (10) days after the first item of material or labor is furnished, of the delivery of the material or performance of labor and of his intention to hold the property liable and the amount for which he will claim a lien.

At issue, basically, is the interpretation and construction of the phrases, "owner-*occupant*" and "owner-*occupied* single or double family dwelling," which were employed by the legislature in this statute.

Both parties agree that it was the legislative will and intent by the enactment of K.R.S. 376.010(4) to provide protective measures to the owner of a single or double family dwelling from the inequities of liens that surface after the owner has paid his contractor in full. However, appellant maintains that the statute is limited to improvements of an existing dwelling house occupied or inhabited by the owner. The appellees maintain that the statute applies, as in this case, to the erection of a new dwelling.

K.R.S. 446.080 provides the basis for construction of statutes as well as the words and phrases contained therein. We find that the 1974 legislature made the following changes in K.R.S. 376.010 as follows:

Subsection (1) additionally provides for the payment of interest upon the lien.

Subsection (2)—no change.

Subsection (3) provides the creditor with 75 days for the giving of notice on claims less than $1,000 and extends the time for the giving of notice to 120 days on claims in excess of $1,000 after the last item of material or labor is furnished.

Subsection (4) is a new provision included within the statute.

After full deliberation it appears that the mechanics' liens statutes are not predicated on any concept of credit reliance. Labor or materialmen can enforce a lien against the owner of land even though at the time he performed the service or furnished the material, he did not know who was the owner. While the mechanics' liens statutes have consistently been construed liberally to protect those who furnish the labor and/or materials, we have no difficulty in discerning the view which the legislature intended to promote and the objects of this statute.

Subsection (4) is applicable only to a single or double family dwelling and this classification is further limited to the class of owner-occupants of owner-occupied dwellings. It appears that it was the legislative intent to use the word "owner-occupied" to mean actual occupancy, and not constructive occupancy. Meaningfully, it denotes premises which are used and occupied as a

dwelling house, though not necessarily on an absolutely continuous and uninterrupted basis. Lexicographers are, however, in agreement that the term "occupant" means one who occupies a particular place, and especially a resident. The usage given to the word "occupied" we hold to be the common usage and to mean "to reside in as an owner." Webster's Third International Dictionary. See also *Nevin v. Louisville Trust Co.,* 258 Ky. 187, 79 S.W.2d 688 (1935). The statute was intended to afford protection to an owner who resided upon the premises as to additions or improvements effectuated by the labor or the materialmen and, therefore, in this case, does not apply to a new dwelling under construction or before the owner-occupant has undertaken residency therein.

Having found no additional provision in section (4) relating to the erection of a home or house and no inconsistency between section (4) and section (1), we think the reasonable effect of section (1) applies in this case. *Baker v. White,* 251 Ky. 691, 65 S.W.2d 1022 (1933). In interpreting the statute the court shall not restrict it to the language of the particular section but may consider the statute as a whole, as well as the condition of the laws of the state in force at the time of its passage, and such other prior or contemporaneous facts and circumstances as may throw light on the intention of the legislature.

The judgment is reversed.

All concur.