Saidee Kempshall SMITH, Appellant,

v.

James R. MAGRUDER c/b/a Magruder Millworks, Edwin C. Jackson Plumbing, Inc., and Ward Construction Company, Appellees.

Court of Appeals of Kentucky.

May 12, 1978.

Will H. Fulton, Louisville, for appellant.

Charles E. Foppiano, Louisville, for appellee, Edwin C. Jackson Plumbing, Inc.

Gordon K. Costley, Louisville, for appellee, Ward Const. Co.

Allen P. Dodd, III, Louisville, for appellee, Magruder Millworks.

Before HOWERTON, LESTER and WINTERSHEIMER, JJ.

WINTERSHEIMER, Judge.

This appeal is from a judgment entered July 21, 1977, in which two mechanic's lien claims were adjudicated against the appellant for labor and materials provided in the reconstruction of her home in 1975. On April 3, 1974, a tornado damaged the Louisville home of the appellant, and from April 3, 1974, until September 1975, her home was uninhabitable and she rented an apartment during the reconstruction. The general

contractor was the Ward Construction Company, who had been previously paid by the appellant, and who had bankrupted the claims of two of the appellees in this case.

Under a contract with Ward, appellee Magruder performed labor and furnished materials between August 1, 1975 and August 12, 1975, and mailed a letter/notice of lien claim for $2,031.06 on November 25, 1975, within 120 days of the date of the last item of material and labor furnished. Appellee Jackson furnished labor and material from February 18, 1975, to August 26, 1975, and on October 1, 1975, mailed a letter/notice of lien claim for $2,775.00 to the appellant. Both of these subcontractors sought to enforce their mechanic's liens under KRS 376.010(3), having complied with the provisions thereof, but neither lienor complied with the provisions of KRS 376.010(4) and the specific requirements of furnishing a ten day written notice to the "owner-occupant of the home" as required by Subsection 4.

The only question presented here is whether the provisions of KRS 376.010(3) or KRS 376.010(4) apply in this situation, and whether the appellant was an owner-occupant of an owner-occupied dwelling within the meaning of KRS 376.010(4).

A clear and simple meaning of the word occupant is one who occupies or has the actual use or possession of a thing, as distinguished from constructive possession thereof. Here, the appellant seeks to have the courts interpret KRS 376.010(4) to apply to this situation. Appellant argues that the statute was intended for the protection of small home owners. However, this Court cannot reasonably interpret the language of the 1976 statute as meaning anything other than it clearly states, that is "owner-occupant." The subsection uses the term "owner-occupied single or double family dwelling". This language is abundantly clear. It applies only to such a classification of persons. If there was a legislative intent to cause the subsection to be applied to situations such as this case, the Legislature could have simply omitted the word "occupant" and the words "owner-occupied" from Subsection 4. If that had been done, compliance with Subsection 4 would have been required wherever work or material was furnished on a single or double family dwelling. The fact that the words "owner-occupant" are used, indicates that actual physical occupancy at the time of the work is necessary to invoke the protection of this statute. Generally, statutes must be narrowly construed when the clear meaning of the language is apparent. The Supreme Court of Kentucky, in *Apache Coal Co. v. Fuller*, Ky., 541 S.W.2d 933 (1976), indicates that the function of the court is limited to a reasonable interpretation of the legislative language, and does not extend to a psychoanalysis of the legislative intent.

It should be noted that the appellees' citation of language contained in a fire insurance policy case does not necessarily apply to this situation. The factual differences between the degree of evidence needed to support occupancy in a fire insurance contract and a mechanic's lien situation are too great to present a truly analogous situation.

It has been the policy of Kentucky law to construe mechanic's lien laws liberally in favor of the lienors. *Hodges v. Quire*, Ky., 174 S.W.2d 9 (1943). Fortunately, the Legislature has recognized the possibility of an abuse which would be to the detriment of some small home owners, and it has identified an exception to the mechanic's lien laws for those premises that are owner-occupied. In a general sense, it is a matter of concern to this Court as to what balance should be maintained between the small house owners and small vendors, both of whom are defrauded by a defaulting general contractor. It is tragic that a small home owner may be required to pay twice for the same service or materials, but on the other hand, the small vendor has no real ability to sustain a loss once his material and labor are expended. The real villain escapes by the route of default or bankruptcy. In this situation, a notice was given to the home owner that a lien claim would be asserted. It was not the notice given to an owner-occupant, because it appears that in

good faith the vendors did not believe the owner was an occupant. Therefore, it appears that no essential injustice resulted from the form of notice given.

■ It is the opinion of this Court that an owner of an uninhabitable parcel of real property is not considered to be an owner-occupant of a single or double family dwelling, pursuant to KRS 376.010(4), and accordingly, it is not mandatory on a subcontractor who has not contracted directly with the owner, but who has furnished labor and materials during the period of uninhabitableness, to notify the owner of the said real property, within ten days of furnishing the first material or labor, of his intention to claim a lien against said real estate.

The judgment of the trial court is affirmed.

HOWERTON, J., concurs.

LESTER, J., concurs by separate opinion.

LESTER, Judge, concurring.

My colleagues have reached the correct conclusion in this appeal, but I believe the central issue requires some comments.

In this litigation, as well as *Kinser Sheet Metal, Inc. v. Morse, et ux.,* Ky.App., 566 S.W.2d 179 (1978), the appellate courts were requested to interpret the 1974 enactment of KRS 376.010 and more particularly whether the owners of a single or double family dwelling should be required to pay subcontractors when they have already paid the contractor for those services and the latter has defaulted in his obligations.

For some undisclosed reason, the General Assembly, unwittingly, created classifications between property owners when it legislated in KRS 376.010(4):

No person who has contracted directly with the owner-occupant or his authorized agent shall acquire a lien under this section on an owner-occupied single or double family dwelling or the appurtenances or additions thereto unless he notifies in writing the owner-occupant of the property to be held liable or his authorized agent not more than ten (10) days after the first item of material or labor is furnished, of the delivery of the material or performance of labor and of his intention to hold the property liable and the amount for which he will claim a lien.

Our decisions have been to the effect that unless the owner actually occupies the dwelling where the goods or services are furnished, then the benefits of the statute are unavailable to him and he can be required to make double payment when his contractor defaults after payment by the owner. This places the party building a new home that is uninhabitable in a position of having to follow up his contractor and determine from each laborer or supplier (if he is aware of their identity) if his contractor has satisfied the obligations. On the other hand, the owner who lives in the structure is absolved from the potential double costs unless he receives a notification of default within ten days. I do not perceive this distinction to have been the real intent of the legislature, for it appears to me that the object was to provide the individuals building a residence the protection of notification of default in a relatively short time so he can take the appropriate action to avoid the lien.

I believe it unfortunate that the legislative body did not delete the word "occupant" or insert "or" between "owner" and "occupant", for that appears to have been the intention or else why restrict it to residential type structures.

I admit that the supply houses for the building industry would have a slight burden placed upon them, in that they would have to determine the name and address of the owners and the type of construction to which they were furnishing materials. This obligation is insignificant compared to the safeguard that would be afforded the owner, in that the materialmen would be much more likely to learn the business practices and financial reliability of the contractors with whom they dealt. For that matter, the supply houses are in a much better

position to have that knowledge or are in a better position to so determine than the owner who may build a new home but once in a lifetime.

As I have indicated above, the result reached in this and the *Kinser Sheet Metal* case is the only one possible under the statute as written, but it certainly thwarts the beneficial purposes which I believe the General Assembly intended.