BEE SPRING LUMBER COMPANY, Appellant,

v.

Edward PUCOSSI and Elena Pucossi, Appellees.

No. 96–SC–0162–DG.

Supreme Court of Kentucky.

April 24, 1997.

Bryan Lesieur, Brownsville, for appellant.

Anthony H. Ambrose, James M. Lloyd, Lloyd and McDaniel, Louisville, for appellees.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed a judgment in favor of Bee Spring Lumber Company but reversed and remanded to the circuit court for the application of KRS .376.010(4), a dollar-for-dollar credit to a second dwelling owned by the Pucossis.

The issue is whether KRS 376.010(4) or KRS 376.010(3) applies to the mechanics' lien of $8,282.68 awarded to the lumber company. The question involves whether an interpretation of KRS 376.010 applies to a second or vacation home and whether it is governed by Section (3) or (4) of the statute.

Edward and Elena Pucossi are residents of Louisville and purchased a lot on Nolin Lake in Edmonson County, Kentucky in 1988. They orally contracted with a builder to construct a lake house on Lot No. 9 for a total price of $20,400. A total of $16,050 was paid by the Pucossis to the builder before he abandoned the job. Bee Spring Lumber Company, which supplied lumber and materials to the builder, was owed $8,292.68 after credits. The construction was never completed and the structure was never occupied. Both the circuit court and the Court of Appeals determined that a lien was properly filed by the lumber company on the premises. The circuit court found that the balance due was $8,292.68 and ordered a sale to satisfy the judgment. The Court of Appeals reached the decision that KRS 376.010(4) was to be applied to the second or vacation home, and therefore remanded the case to the circuit court to apply a dollar-for-dollar credit against the lien because Pucossis had paid the defunct builder for the materials. This Court accepted discretionary review.

The question presented is one of first impression regarding the legal effect of the 1988 amendment to KRS 376.010. Bee Spring Lumber contends that Subsection (4) should not apply to a second or vacation home. The Pucossis argue that the statute protects them when payment is made to a defunct builder. The 1988 amendments were adopted in response to the Court of Appeals cases of *Kinser Sheet Metal, Inc. v. Morse,* Ky.App., 566 S.W.2d 179 (1978) and *Smith v. Magruder,* Ky.App., 566 S.W.2d 430 (1978).

The statute allows a dollar-for-dollar credit when a property owner has paid a defaulting contractor against any materialman's or mechanics' liens filed by suppliers. Apparently the legislative intent was to include owners of property who are having homes constructed pursuant to a construction contract and who intend to use the property as a dwelling once the structure was completed and to afford them certain protection and relief under the language contained in Subsection (4). The language in question is the last sentence of the subsection:

> This subsection shall apply to the construction of single or double family homes constructed pursuant to a construction contract with a property owner and intended for use as the property owner's dwelling.

■ The purpose of KRS 376.010, the Mechanics' and Materialman's Lien Statute, was to provide the suppliers and laborers of building materials some financial security in collecting their contract price by allowing the real property to be encumbered for the amount of the debt. In *Kinser, supra,* the

Court of Appeals construed the phrase "owner-occupied" to mean that actual physical occupancy was necessary to trigger the additional protection provided to homeowners by Subsection (4).

As stated in *Smith* and *Campbell & Summerhays, Inc. v. Greene*, Ky., 381 S.W.2d 531 (1964), it has been the policy of Kentucky law to construe mechanics' lien laws liberally to protect those who furnish labor and materials. As stated in *Smith*, the legislature has recognized the possibility of an abuse which would be to the detriment of some small homeowners and has identified an exception to the mechanics' lien laws for those premises that are owner occupied. The new statutory language applying the subsection to single or double family homes "intended for use as the owners dwelling" when read in context extends the notice requirement for an existing owner occupied dwelling to a dwelling undergoing construction which is to be occupied by the owner when it is ready for such occupancy.

It has always been a matter of concern to this Court as to what balance should be maintained between the small homeowner and the small vendor, both of whom are defrauded by a defaulting general contractor. It is tragic that a small homeowner would be required to pay twice for the same services or materials, but on the other hand, the small vendor has no real ability to sustain a loss once his material and labor are expended. The real villain escapes by the route of default or bankruptcy. *Smith, supra.*

Here, the question becomes "Did the legislature intend to protect those persons who have the opportunity of owning a vacation or second home in addition to their primary residence?"

■ Mechanics' lien statutes protect laborers and suppliers because once the labor and materials are expended they lose their value to the supplier but increase the property value of the premises for the benefit of the landowner. The Pucossis expended $16,050 of the original $20,400 contract price, and they have benefited from the physical improvements to their Nolin Lake real estate.

■ The mechanics' and materialman's statutes are to be construed according to their common and approved language usage. KRS 446.080(4). In interpreting the statutes, we must take a liberal view toward promoting the legislative intent. KRS 446.080(1). Mechanics' lien statutes are to be interpreted liberally to protect those who furnish labor and materials. *Campbell & Summerhays, Inc. v. Greene, supra.*

The property covered includes an owner-occupied dwelling and related improvements to the real property on which the owner-occupied dwelling is located, and to the construction of a home intended for use as the property owner's dwelling even if not yet occupied. Here, the building was not occupied and never completed. The crucial language in the statute is the last sentence of Subsection (4).

The plain meaning of the words intended for use as "the" (emphasis added) property owner's dwelling means primary residence or principal dwelling. Any fair reading of the statute makes it clear that the term "dwelling" is used in the statute to apply to owner-occupied dwelling. If the legislature had wanted to expand the protection of the last sentence of Subsection (4), they might have included language such as "intended for use as the property owner's primary dwelling or vacation home or second home." We do not intend to speculate on what the General Assembly could have added to the statute. We are obliged to interpret what they did in context with the long-standing provisions of mechanics' and materialman's statutes.

■ It is the holding of this Court that KRS 376.010(4) is not applicable to second homes or vacation homes, and the dollar-for-dollar credit provided by that subsection of the statute does not apply to such properties.

The decision of the Court of Appeals is affirmed in regard to the question of fact regarding the validity of the notification of the lien, but reversed in regard to the application of Subsection (4) of the statute.

STEPHENS, C.J., and COOPER, GRAVES, JOHNSTONE and LAMBERT, JJ., concur.

STUMBO, J., dissents by separate opinion.

STUMBO, Justice, dissenting.

Reluctantly, I must dissent. I would not read into KRS 376.010(4) the restriction that the majority places there. In my opinion the subsection was designed to protect the person who builds for his or her own use, be it as a primary or second home, versus the person who builds for commercial purposes, that is, the person who builds to rent or sell to others. As the majority says, "[a]ny fair reading of the statute makes it clear that the term 'dwelling' is used in the statute to apply to an owner-occupied dwelling." The building in question is just such a structure. Had the legislature desired to be as restrictive as the majority contends, the simple addition of the word "primary" prior to the final word of subsection (4) would have accomplished that goal. I prefer to read the statute as written.